# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | CASE NO.: 16-62330-rk |
| ) | Chapter 7 |
| JONATHAN P. WEIDAW ) | JUDGE: RUSS KENDIG |
| RACHEL M. WEIDAW ) | |
| ) | Adversary Proceeding |
| ) | No.: 17-06006-rk |
| Debtors, ) | |
| ) | PLAINTIFF, THE BROTHERS |
| ) | GRIMM GRASS COMPANY, INC.'S |
| THE BROTHERS GRIMM GRASS ) | MOTION FOR SUMMARY |
| COMPANY, INC. ) | JUDGMENT |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JONATHAN P. WEIDAW ) | |
| ) | |
| Defendant. ) | |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff, Brothers Grimm Grass Company, Inc. (hereinafter referred to as "Plaintiff"), hereby moves this Court for an Order granting Summary Judgment in its favor as to all counts set forth by Plaintiff in its Complaint against Defendant, Jonathan P. Weidaw (hereinafter referred to as "Defendant"). This Motion is made on the grounds that no genuine issues of material fact exist and Plaintiff is entitled to judgment as a matter of law. This Motion relies upon the pleadings, deposition transcripts, and affidavits attached hereto and made a part of and incorporated herein. The underlying justification and rationale for this Motion are more fully set forth in the accompanying Memorandum in Support.

Respectfully submitted,

LAW OFFICES OF ROBERT E. SOLES, JR. CO., LPA

By: <u>*/s/ Robert E. Soles, Jr.*</u>
Robert E. Soles, Jr. (#0046707)
Faith R. Dylewski (#0074985)
6545 Market Ave. N.
North Canton, OH 44721
Telephone: (330) 244-8000
Telefax: (330) 244-8002
Counsel for Plaintiff, The Brothers Grimm
Grass Company, Inc.

## MEMORANDUM IN SUPPORT

### I. STATEMENT OF FACTS

In April 2010, Defendant, Jonathan P. Weidaw (hereinafter referred to as "Defendant"), was hired by Plaintiff, Brothers Grimm Grass Company, Inc. (hereinafter referred to as "Plaintiff" or "Brothers Grimm"), as a foreman employee. See the Affidavit of Jacob Grimm, hereinafter referred to as ("J. Grimm Aff."), a true and accurate copy of which is attached hereto as **Exhibit A**, at ¶2. During the time of Defendant's employment, Plaintiff experienced a marked increase in fuel consumption and shop supply usage, and on a number of occasions, numerous tools were reported missing. J. Grimm Aff. at ¶3. In the summer of 2013, Plaintiff began to suspect that Defendant was stealing tools from Plaintiff and misusing corporate credit cards to make unauthorized purchases of fuel. J. Grimm Aff. at ¶4. As such, Plaintiff began an investigation to identify the suspected theft within the business and placed additional surveillance cameras on the company premises. See the Affidavit of Bobbi Grimm, hereinafter referred to as ("B. Grimm Aff."), a true and accurate copy of which is attached hereto as **Exhibit B**, at ¶2.

As part of its investigation into the suspected theft, Plaintiff conducted a review of time card records, credit card statements, and security footage; Plaintiff then personally observed the company security footage and surveillance photos provided by the gas station, Superfleet, and witnessed Defendant unlawfully take company credit cards from company vehicles to make unauthorized purchases for personal consumption. B. Grimm Aff. at ¶¶3, 5 and 6; J. Grimm Aff. at ¶¶5-8. Plaintiff compared the surveillance photos and video with company credit card statements and determined that the unauthorized purchases were made during the time in which Defendant had taken company fuel cards without authorization. B. Grimm Aff. at ¶ 7 and Exhibit 1 attached thereto; J. Grimm Aff. at ¶7. Plaintiff's investigation revealed a gross disparity between the fuel

consumption during the time that Defendant was employed and the time both before and after his employment. B. Grimm Aff. at ¶¶8, 9 and 11.

The investigation revealed that Defendant's theft of fuel had been ongoing, and had started shortly after Plaintiff employed Defendant. B. Grimm Aff. at ¶ 8. In addition, Plaintiff discovered that Defendant had been falsifying his time cards in order to conceal his fraudulent credit purchases. As confirmed by security footage, Defendant would take the company fuel card out of the company vehicle in the evening, falsify his time cards by clocking out fifteen minutes later than he actually did or 10 minutes earlier than he arrived, then he would drive to a gas station regularly used by Plaintiff's employees to purchase unleaded gasoline for his personal vehicle. The next morning, Defendant would slip the company credit card back into the vehicle before anyone noticed. Defendant avoided suspicion by turning in the purchase receipts so that nothing would appear unusual to Plaintiff. Plaintiff saw that a fuel charge was within his falsified time worked and the receipt was turned in so no red flags were raised. B. Grimm Aff. at ¶ 7 and Exhibit 1 thereto.

Further, Defendant was also using the company card to fill gas cans with diesel fuel in order to fuel his home furnace. B. Grimm Aff. at ¶ 7. Defendant identified Hartville Oil as the provider of his heating fuel. Weidaw Deposition at p. 67, hereinafter referred to as "Weidaw Depo.", true and accurate copies of the relevant portions thereof are attached hereto as **Exhibit C**. Plaintiff subpoenaed the records of Hartville Elevator Company (the only "Hartville" company which deals in heating fuel.) and the documents received in response to the subpoena revealed that Defendant purchased very little heating fuel during the time in which he was employed by Brothers Grimm, and no fuel oil from February 3, 2011 until January 30, 2014. See the Affidavit of Attorney Faith Dylewski and the attached subpoenaed documents from Hartville Elevator Company, Inc. a true and accurate copy of which is attached hereto as **Exhibit D**. It was revealed that Defendant had used the

4

credit cards assigned to vehicles which require unleaded gasoline to purchase large quantities of diesel fuel. J. Grimm Aff. at ¶ 11.  At no time was Defendant authorized to make any of these purchases or to otherwise use the company credit cards for anything other than business purchases. J. Grimm Aff. at ¶ 9.

According to industry standards, fuel consumption should equal approximately 4.5% of gross receipts on average. B. Grimm Aff. at  ¶ 9. This statistic is consistent with Brothers Grimm fuel consumption prior to Weidaw's employment and is actually higher than Brothers Grimm's fuel consumption after Weidaw's termination.  B. Grimm Aff. at ¶ 9.  A notable decrease in Plaintiff's fuel consumption was observed immediately after Weidaw was terminated.  In 2013, during the height of Defendant's fraudulent activities, Plaintiff's credit card fuel purchases reached a record high of 6.71% of its gross receipts.  B. Grimm Aff. at ¶ 11. Immediately after Defendant was arrested and terminated, Plaintiff's fuel purchases dropped well below industry standards to 3.4% of gross receipts.  B. Grimm Aff. at ¶ 11.

During Weidaw's employment, excess fuel consumption as a result of Defendant's misuse of Plaintiff's credit cards was calculated to be:

- $852.89 in calendar year 2010
- $14,235.77 in calendar year 2011
- $13,472.89 in calendar year 2012
- $16,576.70 from January 1, 2013 through October 4, 2013

B. Grimm Aff. at ¶¶ 10-11, and exhibits 2 and 3 thereto.

Furthermore, near the end of Defendant's employment, Plaintiff often observed company tools, which were later discovered to be missing, in Defendant's tool bag. J. Grimm Aff. at ¶ 14-15.

5

It was discovered that Defendant had removed and used more than eight times more shop supplies than any other foreman in the months before his termination. J. Grimm Aff. at ¶ 16. Another employee, Justin Zwick, testified in his deposition that he witnessed Defendant using the company fuel cards for his personal use, witnessed him taking shop supplies and tools, and saw him place a diamond saw blade inside his coat outside of the view of the surveillance cameras. See Deposition of Justin Zwick (hereinafter "Zwick Depo.") at pp. 8-10, 12-13, and 15-18, a true and accurate copy of the relevant portions of which are attached hereto as **Exhibit E.** Jacob Grimm, had personally witnessed tools he recognized as belonging to Plaintiff, in the possession of Defendant, which Defendant claimed were his, but which were later found to be missing from their place in the shop. J. Grimm Aff. at ¶¶ 10, 14-17. Plaintiff's employees are not permitted to place company property in their personal vehicles or take equipment home for personal use. J. Grimm Aff. at ¶ 13.

Plaintiff conducted a thorough search and created an inventory of missing items last seen in Defendant's possession. J. Grimm Aff. at ¶¶ 18, 20 and 21. From Plaintiff's investigation and inventory of the tools and equipment, Plaintiff discovered that Defendant had stolen the following items:

- (4-6) Diamond saw blades valued at $285.00 each;
- Porter Cable portable air compressor and hose valued at $185.00;
- Dewalt battery operated tools consisting of a drill, screw gun, circular saw, batteries and chargers valued at $1000.00;
- Multiple Fuel cans valued collectively at $250.00;
- Miscellaneous various hand tools including, screwdrivers, wrenches, and mechanic's tools valued at $1200.00;

- Shop supplies including chemicals, carburetor cleaner, brake cleaner, and motor oil valued collectively at $2500.00;
- Green line volt meter valued at $146.00;
- Extension cords valued at $200-$300 collectively;
- Stihl Commercial grade weed eater valued at $575.00; and
- Echo weed eater valued at $345.00.

See the J. Grimm Aff. at ¶21.

Defendant was then arrested and terminated on October 4, 2013. J. Grimm Aff. at ¶ 19. Defendant subsequently pled guilty to felony theft and misuse of credit cards in Summit County Case No. 2013-10-2803. B. Grimm Aff. at ¶¶ 13-14; J. Grimm Aff. at ¶¶ 22-23. Plaintiff then agreed to the terms of Defendant's plea arrangement with the understanding that doing so would not hinder its efforts to recoup its actual extensive damages through a civil action. B. Grimm Aff. at ¶ 15; J. Grimm Aff. at ¶ 24.

## II. **STANDARD OF REVIEW**

Under Federal Law, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and requests for admission, together with affidavits, if any, demonstrate that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment at a matter of law. F.R.C.P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence and reasonable inferences in the light most favorable to the nonmoving party." *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 797 (6th Cir. 2005).

The movant for summary judgment must initially proffer evidentiary materials supporting his position on issues the movant would be obliged to carry the burden of proof at trial.

Fed.Rules Bankr.Proc.Rule 7056, 11 U.S.C.A. *In re Varrasso*, 37 F.3d 760 (1st Cir. 1994). Once proffered, the movant need do no more than aver an absence of evidence to support nonmoving party's case; the burden of production then shifts to nonmovant, who, to avoid summary judgment, must establish existence of at least one question of fact that is both genuine and material. *Id.* If the nonmovant fails to set forth specific facts that present a triable issue, its claims should not survive summary judgment *PMC Mktg. Corp.,* No. AP 12-00167-BKT, 2016 WL 319528, at *8 (B.A.P. 1st Cir. Jan. 19, 2016).

### III. <u>LAW AND ARGUMENT</u>

Pursuant to 11 U.S.C.A. § 523(a), Federal Courts apply a two-part test in deciding whether a debt is nondischargeable in a bankruptcy proceeding; First, the Plaintiff bears the burden of proving whether it holds an enforceable obligation against Defendant under non-bankruptcy law, and secondly, whether that debt is nondischargeable under bankruptcy law. *In re Witmer*, 541 B.R. 769 (Bankr. M.D. Pa. 2015). The Bankruptcy Code broadly defines the term "debt" to mean "liability on a claim". 11 U.S.C. § 101(12). The term "claim" includes "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured *In re Demeza,* No. 1-16-AP-00141 RNO, 2017 WL 3207689, at *3 (Bankr. M.D. Pa. July 28, 2017).

In admitting his guilt to felony theft and misuse of credit cards in Summit County Case Number 2013-10-2803, and as demonstrated by the overwhelming evidence in the attached affidavits, and deposition testimony, it is clear that Plaintiff holds an enforceable obligation against Defendant under non-bankruptcy law pursuant to Ohio Revised Code Chapter 2913. As indicated above, the proceeding arguments will demonstrate there are no material facts in dispute that the debts incurred by Defendant are an enforceable obligation and are a nondischargeable debt pursuant

8

to 11 U.S.C.A. § 523(a). As such, there is no genuine issue of material fact and Plaintiff is entitled to judgment as a matter of law.

> **A.** **Plaintiff, Brothers Grimm Grass Company, Inc, is entitled to summary judgment as a matter of law against Defendant, Jonathan P. Weidaw, because his debts incurred to Plaintiff are an enforceable obligation pursuant to Ohio Revised Code Chapter 2913.**

Under Ohio Law, the criminal offenses of embezzlement, larceny, and conversion are all subsumed under the offense of theft. Pursuant to Ohio Revised Code 2913.02, a person is liable for theft when they act knowingly with the purpose of depriving and exerting control over another's property or services: (1) without the consent of the owner or person authorized to give consent; (2) beyond the scope of the express or implied consent of the owner or person authorized to give consent; (3) by deception; (4) by threat; and (4) by intimidation. O.R.C. 2913.02. In addition, a person is also guilty of theft for procuring the misuse of credit cards pursuant to O.R.C. 2913.21. The misuse of credits card is an act of intent to defraud or obtain property by the use of a credit card, in one or more transactions, knowing or having reasonable cause to believe that the card has expired or been revoked, or was obtained, is retained, or is being used in violation of law. O.R.C. 2913.21. Further, a person is guilty of a felony in the fifth degree regardless of the value of the property involved, if the property involved is a credit card. O.R.C. 2913.71.

In the case at hand, as demonstrated by Defendant's guilty plea to the charges of felony theft and misuse of credit cards in Summit County Case No. 2013-10-2803, and the facts contained in the attached affidavits, it is clear that Defendant is guilty of felony theft and misuse of credit cards under Ohio Law; thus, Plaintiff has an enforceable obligation against Defendant under non-bankruptcy law.

There is no material factual dispute that Defendant knowingly obtained and exerted control over tools and equipment owned by Plaintiff, worth Eight-Thousand Two Hundred Eleven and 0/100 Dollars ($8,211.00), without the consent of the Plaintiff and through the use of deception. See J. Grimm Aff. at ¶¶ 14-18, and 20-21. This behavior was observed by Plaintiff's employees, and Jacob Grimm. J. Grimm Aff. at ¶¶ 14, 16 and 21. Justin Zwick testified that: he had seen Defendant take a weed eater, brake parts cleaner, a diamond saw blade and Dewalt tools belonging to Plaintiff; and he had seen Plaintiff's air compressor and other tools at Defendant's house. Zwick Depo. at pp. 8-10, 12-13, and 15-18.

Likewise, there is no material fact in dispute that Defendant fraudulently made personal purchases of fuel using Plaintiff's credit cards. On multiple occasions, in acting, beyond the scope of Plaintiff's permission, and with the purpose to defraud, Defendant obtained and used corporate credit cards from Plaintiff in violation of Ohio Law to make unauthorized purchases of fuel for his personal use. Justin Zwick's testimony clearly established that Defendant was using Plaintiff's credit cards to purchase fuel for his personal use; Zwick had witnessed Defendant taking the card out of the vehicle in which it was kept and returning it later with the receipt to conceal the theft, and Zwick was aware that Defendant was stealing diesel fuel for the purpose of heating his home. Zwick Depo. at pp. 8-10, 12-13, and 15-18. After an extensive investigation, which included a review of surveillance videos, credit card statements, time keeping records, and a comparison of fuel purchasing patterns before, during and after Defendant's employment at Brothers Grimm, Plaintiff established that Defendant made $45,138.25 in fraudulent fuel purchases during his employment with Plaintiff. B. Grimm Aff. at ¶¶ 3-11, and exhibits 2 and 3 thereto.

Under O.R.C. 2307.61, if a property owner brings a civil action to recover damages against a person who commits a theft offense against their property, liquidated damages are available in the amount of three times the value of the property at the time it was the subject of a theft offense, irrespective of whether the property is recovered by way of replevin or otherwise, is destroyed or otherwise damaged, is modified or otherwise altered, or is resalable at its full market price. Therefore, because Defendant plead guilty to theft and misuse of credit cards offenses and because the evidence irrefutably demonstrates that Defendant has committed a theft offense against Plaintiff in the amount of Fifty Three Thousand Three Hundred Forty Nine and 25/100 Dollars ($53,349.25), Plaintiff has an enforceable obligation against Defendant under non-bankruptcy law in the amount of One Hundred Sixty Thousand Forty Seven and 75/100 Dollars ($160,047.75) representing the damages Plaintiff is entitled to pursuant to ORC 2307.61.

In reviewing the evidence in the light most favorable to the non-moving party, the inescapable conclusion is that reasonable minds can come to but one conclusion, and that is that Plaintiff holds an enforceable obligation not arising under bankruptcy law against Defendant in the amount of One Hundred Sixty Thousand Forty Seven and 75/100 Dollars ($160,047.75).

**B. Plaintiff, Brothers Grimm Grass Company, Inc, is entitled to summary judgment against Defendant, Jonathan P. Weidaw finding that his debts incurred to Plaintiff are a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(2).**

"Section 523(a)(2)(A) of the Bankruptcy Code implements the long-standing bankruptcy policy that only those debts which are honestly incurred are entitled to the benefits of a bankruptcy discharge." *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 162 (Bankr. N.D. Ohio 2003). Accordingly, Section 523(a)(2)(A) "bars the discharge of all liability arising from fraud." *Casab v. Grand Sky Enter. Co.*, No. 15-1378, 2016 U.S. App. LEXIS 7388, at *7 (6th Cir. Mar. 25, 2016). To except a debt from discharge due to false pretenses or a false representation, Plaintiff

11

must establish the following elements: (1) debtor made a false representation of fact, (2) which debtor (a) either knew to be false or made with reckless disregard for its truth, and (b) made with an intent to deceive, and (3) creditor justifiably relied on the false representation. 11 U.S.C.A. § 523(a)(2)(A); *In re Burke*, 405 B.R. 626 (Bankr. N.D. Ill. 2009*), aff'd sub nom. ColeMichael Investments, L.L.C. v. Burke*, 436 B.R. 53 (N.D. Ill. 2010); *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998); *Rice v. Morse (In re Morse)*, Nos. 1:13-bk-13188-SDR, 1:13-ap-01110-SDR, 2016 Bankr. LEXIS 180, at *22 (U.S. Bankr. E.D. Tenn. Jan. 13, 2016). "A false representation has been defined as an expressed misrepresentation. In contrast, false pretenses involve an implied representation or conduct that is intended to create and foster a false impression. Actual fraud is a broader concept that has been defined as any deceit, artifice, trick or design involving a direct and active operation of mind, used to circumvent and cheat another - something said, done or omitted with the design of perpetrating a cheat or deception." *Lawrence Bank v. Brent (In re Brent)*, 539 B.R. 788, 798-99 (Bankr. S.D. Ohio 2015).

When there is evidence of "actual fraud," a false representation is not a necessary element when considering a dischargeability claim under 11 U.S.C. § 523(a)(2)(A). *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1590, 194 L. Ed. 2d 655 (2016); *HST Corp. Interiors, LLC v. Sherrick (In re Sherrick)*, Nos. 316-00182, 316-90109, 2017 Bankr. LEXIS 1876, at *13-14 (U.S. Bankr. M.D. Tenn. July 5, 2017). "Actual Fraud" consists of any deceit, artifice, trick, or design involving direct and active operations of mind used to circumvent or cheat another; that is, something said, done, or omitted with design of perpetrating what is known to be cheat or deception. 405 B.R. at 646 (Bankr. N.D. Ill. 2009). In the case of actual fraud, a creditor must establish the following: "(1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3)

the fraud created the debt that is the subject of the discharge dispute." *Id*. When considering dischargeability of a debt pursuant to Section 523(a)(2)(A), a bankruptcy court must determine "whether the circumstances, as viewed in the aggregate, present a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor." *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 163 (Bankr. N.D. Ohio 2003.

In the instant case, Defendants actions clearly "present a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor." Defendant falsely represented through his actions that he was procuring fuel on behalf of Plaintiff, when in fact he was using Plaintiff's credit cards to purchase fuel for his own benefit. Defendant's conduct in the aggregate clearly shows a willful intention to deceive. Defendant's fraud is further evident by his falsification of timecards in order to conceal his theft. "Weidaw had falsified his timecards to reflect that he arrived 10 minutes earlier than he actually did, or left 15 minutes after he actually did, and in those times, he would drive to a gas station regularly used by the company to purchase fuel for his personal use, using the Brothers Grimm credit cards. The surveillance revealed that the following morning, Weidaw would return the card to the company vehicle in which it was kept, and turn in the receipt, so that nothing would appear unusual on the surface. I saw the fuel charge within the time Weidaw falsely alleged that he worked and he had a receipt so no flags were initially raised." B. Grimm Aff. at ¶ 7.

Moreover, Defendant instructed other employees on his method of how to steal fuel and not get caught. Zwick Depo. at p. 15.

Q. And what did he – what did he instruct you?

13

A. Basically just put the fuel receipt with the card, because all that was checked at the end of the week was the receipts. If the receipts matched up, there was no questions asked.

Zwick Depo. at 15. Defendant's actions were the epitome of actual fraud, going so far as to instruct other employees of the manner in which he deceived Plaintiff. There is an absence of any material fact with respect to the dischargeability of Defendant's underlying obligation to Plaintiff pursuant to 11 U.S.C. §523(a)(2), and accordingly, Plaintiff is entitled to judgment as a matter of law.

### C. **Plaintiff, Brothers Grimm Grass Company, Inc., is entitled to summary judgment on its claims against Defendant, Jonathan P. Weidaw in that his debts incurred to Plaintiff are nondischargeable pursuant to 11 U.S.C. § 523(a)(4) as they came about through embezzlement or larceny.**

Under U.S.C.A. § 523(a)(4), a discharge of debt in a bankruptcy proceeding does not discharge an individual debtor from any debt incurred through embezzlement or larceny. In order for debt to be nondischargeable on grounds of embezzlement, Plaintiff must prove fraudulent appropriation of property by person to whom such property has been entrusted or into whose hands it has lawfully come. *In re Demeza*, No. 1-16-AP-00141 RNO, 2017 WL 3207689 (Bankr. M.D. Pa. July 28, 2017). With respect to claims of embezzlement or larceny under Section 523(a)(4), the debt is nondischargeable whether or not the debtor was acting in a fiduciary capacity. *HST Corp. Interiors, LLC v. Sherrick (In re Sherrick)*, Nos. 316-00182, 316-90109, 2017 Bankr. LEXIS 1876, at *15 (U.S. Bankr. M.D. Tenn. July 5, 2017), a copy of which is attached hereto as **Exhibit F**.

The Sixth Circuit recognizes the federal law definition of "embezzlement" under section 523(a)(4) as "'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.' A creditor proves embezzlement by

14

17-06006-rk    Doc 23    FILED 08/11/17    ENTERED 08/11/17 15:24:55    Page 14 of 18

showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud. *Rice v. Morse (In re Morse)*, Nos. 1:13-bk-13188-SDR, 1:13-ap-01110-SDR, 2016 Bankr. LEXIS 180, at *34 (U.S. Bankr. E.D. Tenn. Jan. 13, 2016). In order for a debt to be nondischargeable on the ground of larceny, Plaintiff must prove the debtor unlawfully took their personal property with the intent to permanently deprive the Plaintiff of their property. *In re Piscioneri*, 108 B.R. 595, 602 (Bankr. N.D. Ohio 1989).

In the case at hand, as demonstrated by Defendant's guilty plea to the charges of felony theft and misuse of credit cards in Summit County Case No. 2013-10-2803, and the facts contained in the attached affidavits, it is clear that Defendant is guilty of felony theft under Ohio law and that the criminal acts of Defendant constitute unlawful embezzlement and larceny. During his employment, Plaintiff entrusted Defendant with corporate credit cards for the limited use of making corporate purchases, specifically fueling company vehicles for travel to various job sites. In addition to the corporate credit cards, Plaintiff also entrusted Defendant with various tools and equipment belonging to Plaintiff, to be used in the course of business.

Upon the investigation into Defendant's criminal acts, Plaintiff discovered that its fuel consumption, which is purchased on corporate credit cards that were entrusted to Defendant, had increased exponentially during Defendant's employment. B. Grimm Aff. at ¶9. Yet, a marked decrease in fuel consumption was observed immediately after Defendant's termination. B. Grimm Aff. at ¶¶10-11. Upon further investigating timecards and credit card statements, and observing surveillance footage, and surveillance photos provided by Superfleet, it was discovered that Defendant had unlawfully and without permission used Plaintiff's corporate credit cards for personal usage. B. Grimm Aff. at ¶¶10-11; J. Grimm Aff. at ¶6. It was further

discovered that Defendant had falsified his time cards to conceal his fraudulent credit card purchases. J. Grimm Aff. at ¶8.

In addition to being entrusted with Plaintiff's corporate credit cards, Plaintiff entrusted Defendant with various corporate inventory and equipment during his employment. After Defendant's termination, Plaintiff's performed an investigation as to the missing inventory and equipment. Based upon this investigation Plaintiff determined that Defendant, with the intent to permanently deprive Plaintiff of its property, unlawfully took the following items:

- (4-6) Diamond saw blades valued at $285.00 each;
- Porter Cable portable air compressor and hose valued at $185.00;
- Dewalt battery operated tools consisting of a drill, screw gun, circular saw, batteries and chargers valued at $1000.00;
- Multiple Fuel cans valued collectively at $250.00;
- Miscellaneous various hand tools including, screwdrivers, wrenches, and mechanic's tools valued at $1200.00;
- Shop supplies including chemicals, carburetor cleaner, brake cleaner, and motor oil valued collectively at $2500.00;
- Green line volt meter valued at $146.00;
- Extension cords valued at $200-$300 collectively;
- Stihl Commercial grade weed eater valued at $575.00; and
- Echo weed eater valued at $345.00

J. Grimm Aff at ¶21. Thereafter, Defendant was arrested and indicted for theft and misuse of credit cards, to which he pled guilty in the presence of Plaintiff. B. Grimm Aff. at ¶¶12-14; J. Grimm Aff at ¶¶22-23.

Based upon the foregoing, specifically the facts stated herein and in the attached affidavits, and as demonstrated by Defendant's guilty plea to the charges of felony theft and misuse of credit cards, it is clear that the criminal acts of Defendant constitute a fraudulent appropriation of Plaintiff's property entrusted on Defendant, thus meeting the elements of both embezzlement and larceny. Therefore, because the undisputed material facts establish that Defendant's debt was incurred through embezzlement and larceny, reasonable minds can come to only one conclusion, that Plaintiff is entitled to judgment as a matter of law finding that Defendant's obligations are not dischargeable pursuant to 11 U.S.C. §523(a)(4).

**IV.     CONCLUSION**

The undisputable material facts demonstrate that Plaintiff holds an enforceable obligation against Defendant under Ohio law, and that the debt having been incurred through fraud, deceit, larceny and embezzlement, is a nondischargeable debt pursuant to 11 U.S.C. §523(a)(2) and (4).

WHEREFORE, Plaintiff, The Brothers Grimm Grass Company, Inc., hereby respectfully requests that this Court grant Summary Judgment in favor of Plaintiff and against Defendant, Jonathan P. Weidaw, on all Counts set forth in its Complaint, determining that Defendant, Jonathan P. Weidaw, owes The Brothers Grimm Grass Company, Inc. the debt in the amount of One Hundred Sixty Thousand Forty Seven and 75/100 Dollars ($160,047.75), the same being an enforceable obligation owed to Plaintiff under Ohio law, and that the debt, having been procured through fraud, deceit, larceny and embezzlement, is nondischargeable pursuant to the provisions of Sections 523(a)(2) and (a)(4) of the Bankruptcy Code,.

Respectfully submitted,

LAW OFFICES OF ROBERT E. SOLES, JR. CO., LPA


By: */s/ Robert E. Soles, Jr.*
Robert E. Soles, Jr. (#0046707)
Faith R. Dylewski (#0074985)
6545 Market Ave. N.
North Canton, OH 44721
Telephone: (330) 244-8000
Telefax: (330) 244-8002
*Counsel for Plaintiff, The Brothers Grimm Grass Company, Inc.*

## CERTIFICATE OF SERVICE AND NOTICE PURSUANT TO LOCAL BANKR. R. 9013-1(a)

I hereby certify that on this 11th day of August, 2017, a copy of the foregoing *Plaintiff, The Brothers Grimm Grass Company, Inc.'s Motion for Summary Judgment* was served:

**Via the Court's Electronic Case Filing System on those entities and individuals who are listed on the Court's Electronic Mail Notice List:**

Anthony DeGirolamo, Chapter 7 Trustee, at ajdlaw@sbcglobal.net

Office of the United State Trustee, Northern District of Ohio

Brian A. Smith, Attorney for Debtors, at attybsmith@gmail.com

**Notice is hereby given that any objection to this Motion must be filed with 14 days, or such other time as specified by applicable Federal Rule of Bankruptcy Procedure or statute or as the Court may order, from the date of service as set forth on this Certificate of Service, if the relief sought is opposed, and the Court is authorized to grant the relief requested without further notice unless a timely objection is filed.**


*/s/ Robert E. Soles, Jr.*
*Counsel for Plaintiff, The Brothers Grimm Grass Company, Inc.*


4821-5451-0668, v. 1