**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Dated: 03:56 PM December 28, 2017**

**Russ Kendig**
**United States Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| JONATHAN P. WEIDAW<br>RACHEL M. WEIDAW, | CASE NO. 16-62330-rk |
| Debtors. | ADV. NO. 17-6006-rk |
| ——————————————— | JUDGE RUSS KENDIG |
| THE BROTHERS GRIMM<br>GRASS COMPANY, INC., | |
| Plaintiff,<br>v. | **AMENDED MEMORANDUM OF OPINION (NOT FOR PUBLICATION)** |
| JONATHAN P. WEIDAW, | |
| Defendant. | |

Now before the court is Plaintiff's motion for summary judgment brought pursuant to Bankruptcy Rule 7056. Defendant opposes the motion.

The court has jurisdiction of this proceeding under 28 U.S.C. § 1334(b) and the general order of reference entered by the United States District Court on April 4, 2012. This is a statutorily core proceeding under 28 U.S.C. § 157(b)(2)(I) and the court has authority to issue

1

final entries.   Pursuant to 11 U.S.C. § 1409, venue in this court is proper.

This opinion is not intended for publication or citation.   The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

The Brothers Grimm Grass Company, Inc. ("Plaintiff") is a creditor and former employer of Jonathan Weidaw ("Defendant").   Plaintiff hired Defendant in April of 2010 as a foreman.   After more than three years in Plaintiff's employ, Defendant was both terminated from his job and arrested for felony theft and misuse of credit cards on October 4, 2013.   Defendant then pled guilty to all charges in Summit County Case No. 2012-10-2803, in the presence of Plaintiff owners Jacob and Bobbi Grimm.   Defendant participated in the Prosecutor's Diversionary Program, and on October 14, 2014, the indictment was dismissed, and all records pertaining to the case sealed.   (Def. Exhibit – Journal Entry.)   Plaintiff and Defendant agree on virtually no relevant facts arising from the time period between these events.

According to Plaintiff, the company had begun to observe a "marked increase in fuel consumption and shop supply usage" during Defendant's tenure, putting fuel consumption, expressed as a percentage of gross receipts, at more than 2.2% higher than the industry standard (Motion for Summary Judgment at pp. 1, 5).   In the summer of 2013, Plaintiff began a covert investigation to identify the party responsible for these changes, and installed additional security cameras on the premises.   Plaintiff also conducted a thorough examination of time sheets, credit card statements, and security footage from Superfleet, the gas station utilized by Defendant.   The gas station footage showed Defendant removing the company credit card from the company truck, which Plaintiff alleges he did not have permission to do.   When the video was compared to the credit card statements, Plaintiff discovered that Defendant had made unauthorized purchases of fuel for personal consumption during those periods in which the card had been removed from the vehicle.   The fuel purchased was not only used in Defendant's personal vehicle, but also allegedly siphoned off into cans for use in heating his home.   Plaintiff also claims that Defendant falsified his timekeeping in order to conceal his unauthorized activities; he would say he arrived earlier or left later than he actually did, with the extended times corresponding directly to his illicit gas station visits.   He would then return the credit card to the vehicle and turn in the gas receipt as usual, leaving no one the wiser.   Beyond the theft of the fuel, this practice, if it indeed occurred, would have disrupted the calculus used to award Defendant's bonuses and compensation, giving him credit for time he did not actually spend working.

In addition to the misuse of the company credit card and falsified timekeeping, Defendant also stands accused of stealing tools and other supplies.   Jacob Grimm ("Grimm") has testified that, on numerous occasions, he witnessed Defendant in possession of tools identical to those belonging to the company.   When confronted, Defendant would insist the tools were his own property; however, Grimm would later discover that those same tools were missing from the company's inventory.   Plaintiff has provided in his motion an exhaustive list of this equipment and the value of each item, and emphasizes the fact that employees were under no circumstances

permitted to take tools from the shop for use at home.

      For his part, Defendant challenges the bulk of Plaintiff's version of events. Defendant claims that Grimm would frequently ask him to perform odd jobs using his personal vehicle instead of a company truck. In fact, Defendant alleges that he even communicated to Plaintiff his preference that he no longer use his own vehicle for such tasks, and Plaintiff told him to continue to do so, expressly permitting him to use the company card to purchase gas. Plaintiff denies this. As for the allegedly-unauthorized removal of the credit card from the company vehicle, Defendant not only argues that such conduct was common and accepted, but also claims that his job duties included collecting the fuel receipts from the vehicles and making sure the cards were in place. Plaintiff denies that his job included any such task, saying that doing so was instead the responsibility of Grimm's wife, Bobbi.

      In addition, Defendant does not, in so many words, deny that he had kept a number of company tools and other equipment at his home; rather, he emphasizes that all items save for the air compressor were eventually returned to Plaintiff, after his termination from the company. He also claims to have, with Plaintiff's permission, kept his own labelled tools at the company shop. As for Plaintiff's claim that he was purchasing fuel oil for his home on the company card, Defendant denies using fuel oil at all, saying that during his time with the company, he received only one small shipment through the Home Energy Assistance Plan ("HEAP") and found that his furnace did not work properly; he then stopped using it altogether.

      Defendant filed a chapter 7 bankruptcy case on November 12, 2016. Plaintiff commenced this adversary complaint on March 3, 2017, seeking nondischargeability under 11 U.S.C. § 523(a)(2)(A) and (a)(4). Defendant answered the complaint, denying Plaintiff's version of events, and requesting dismissal.

## **DISCUSSION**

      Federal civil procedure rules regarding summary judgment apply also in adversary proceedings. Fed. R .Bankr. Pro. 7056. In order to succeed on a motion for summary judgment, the movant must show that "there is no dispute as to any material fact," and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56. In considering the motion, the court must view the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). If the moving party meets her burden of showing the absence of genuine issues of fact, the burden shifts to the nonmoving party to establish the existence of a fact requiring trial. Automated Sol. Corp., v. Paragon Data Sys., Inc., 756 F.3d 504, 521 (6th Cir. 2014) (citation omitted). Such a material fact is one having the potential to affect the outcome of the proceeding. Rieser v. Hayslip (In re Canyon Sys. Corp.), 343 B.R. 615, 629 (Bankr. S.D. Ohio 2006).

      Plaintiff in this case has claimed that parts of Defendant's debt are nondischargeable, for two alternative reasons: the debt was obtained by fraud, and the debt was obtained through

3

embezzlement. A "debt" is statutorily defined as liability on a claim, which is in turn defined as a right to payment. 11 U.S.C. §§ 101(12), 101(5). Per the Supreme Court, a right to payment is "nothing more nor less than an enforceable obligation." Cohen v. De La Cruz, 523 U.S. 213, 219 (1998), quoting Pennsylvania Dept. of Public Welfare v. Davenport, 495 U.S. 552, 559 (1990). The central question then is whether there exists a dispute as to any material fact that would help prove or disprove the dischargeability of the debts at issue.

Under the Bankruptcy Code, a debt "for money, property, services, or an extension, renewal, or refinancing of credit" will not be discharged, to the extent that it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C § 523(a)(2)(A). Without limitation, the statutory language "makes clear that the share of money, property, etc., that is obtained by fraud gives rise to a nondischargeable debt." De La Cruz, supra, at 219. Thus, in order for a creditor to prevent a discharge, he must prove that: "(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss." Rembert v. AT&T Universal Card Servs. (In re Rembert), 141 F.3d 277, 280-81 (6th Cir. 1998).

A debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" is similarly nondischargeable. 11 U.S.C. § 523(a)(4). A creditor must prove embezzlement by demonstrating that "he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." Sheen Falls Strategies, LLC v. Keane (In re Keane), 560 B.R. 475, 492 (Bankr. N.D. Ohio 2016), quoting Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci), 493 F.3d 635, 644 (6th Cir. 2007). In such a case, "fraud in fact involving moral turpitude or intentional wrongdoing" must be shown, and may be proved through circumstantial evidence. Id.

A substantial majority of the material facts necessary to prove the elements of *either* of Plaintiff's theories of nondischargeability are plainly in dispute. There is precious little factual agreement between the parties at all, beyond independently verifiable dates and times. Plaintiff claims to never have given authorization for Defendant to use his personal vehicle for work purposes; Defendant claims such practice was not just tolerated, but expressly encouraged. Defendant insists that any tools or instruments witnessed in his possession were in fact his, while Plaintiff argues that they were stolen from the company. The parties detail diametrically opposed versions of the procedures and policies surrounding the use of the gas cards, placing in dispute the facts critical to determining not only the theft of the gasoline itself, but the legitimacy of Defendant's timekeeping and its impact on wages and other benefits. There is no unified narrative that addresses and satisfies the elements of § 523(a)(2) or (a)(4).

Plaintiff, however, assures the court that there is a workaround available, to avoid wading into the morass of conflicting stories. Under a collateral estoppel theory, Plaintiff argues that Defendant's guilty plea in Summit County establishes all of the facts needed to prove the nondischargeability of the debts. The determination of whether a prior state court criminal

conviction can be given preclusive effect, however, is determined by state law. McDermott v. Kerr (In re Kerr), 2017 Bankr. LEXIS 606, *8 (Bankr. N.D. Ohio 2017), citing Corzin v. Fordu (In re Fordu), 201 F.3d 693, 703 (6th Cir. 1999). Ohio law permits that issues determined in a criminal action be re-litigated in a subsequent civil action. Grange Mut. Cas. Co. v. Chapman (In re Chapman), 228 B.R. 899, 905 (Bankr. N.D. Ohio 1998). This is due in large part to the doctrine's requirement of mutuality of parties: just as the State of Ohio is not a party to this adversary proceeding, Plaintiff was not a party to the criminal prosecution. Id. In addition, there are significant and "inherent" differences between civil and criminal proceedings that make any potential preclusive effect inequitable. See, e.g., Phillips v. Rayburn, 113 Ohio App. 3d 374, 381-82, 680 N.E.2d 1279, 1284 (1996) ("Procedural and discovery differences between the criminal and civil forums coupled with the defendant's dilemma over whether to testify in his own behalf or present any defense at the criminal trial make [issue] preclusion . . . a precarious and . . . unwise practice.")

Even if collateral estoppel were permissible in this case, the parties have not given the court adequate information with which to responsibly apply the doctrine. The record of the Summit County criminal proceeding is sealed, and the indictment has been dismissed, after Defendant successful completion of the diversionary program. Neither Plaintiff nor Defendant has furnished the court with any law regarding whether or not a case in which the indictment is dismissed may even be considered a conviction at all. The factual record is similarly lacking: the only document of record in the prior proceeding submitted to the court was the journal entry memorializing the dismissal. Though that entry did provide the bare minimum of information regarding the charges to which Defendant had previously pled guilty ("theft" and "misuse of credit cards", both fifth-degree felonies), it contained no other specifics. Plaintiff has asked this court to grant preclusive effect to a collection of material facts, and on that basis adjudicate the dischargeability of Defendant's debts, without having offered proof that those facts were actually litigated. This it cannot do.

Plaintiff has not established a lack of genuine issue of material fact on the elements of its § 523(a)(2) and (a)(4) claims for nondischargeability, failing to carry its burden. The court will deny Plaintiff's motion for summary judgment by separate order.

#　　　#　　　#

**Service List:**

**Robert E. Soles, Jr.**
Washington Square Office Park
6545 Market Avenue, N.
North Canton, OH 44721

**Brian A. Smith**
755 White Pond Drive
Suite 403
Akron, OH 44320